2019 IL App (2d) 190608-U
No. 2-19-0608
Order filed December 9, 2019

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* L.H. and T.H., | ) | Appeal from the Circuit Court |
| Minors, | ) | of Carroll County. |
| | ) | |
| | ) | Nos. 18-JA-05, |
| | ) | 18-JA-06 |
| | ) | |
| (The People of the State of Illinois, | ) | Honorable |
| Petitioner-Appellee v. Jessica S., | ) | John J. Kane, |
| Respondent-Appellant). | ) | Judge, Presiding. |

JUSTICE BURKE delivered the judgment of the court.
Presiding Justice Birkett and Justice Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court did not abuse its discretion in denying respondent's amended motion to vacate adjudication and respondent has failed to demonstrate that she was denied her right to the effective assistance of counsel.  Affirmed.

¶ 2    The Calhoun County State's Attorney filed a petition for adjudication of wardship regarding the minors, L.H. and T.H., which alleged, *inter alia*, that the minors were "neglected or abused, or are at risk of neglect or abuse" because on July 14, 2018, while having custody of the minors, their mother, respondent, Jessica S., "committed the offenses of Possession of Methamphetamine, Possession of Controlled Substance, and Retail Theft; That a search warrant of the residence of the minors and [respondent] on July 16, 2018, revealed widespread evidence

of methamphetamine use and possession, and possession with intent to deliver methamphetamine. Said search also revealed homemade weapons and ammunition." On September 4, 2018, the trial court adjudicated the minors neglected and found respondent unfit. Subsequently, the court transferred the cases to Carroll County because respondent had moved to Iowa and the minors had been placed in foster care in Carroll County. Following a dispositional hearing, the Carroll County circuit court held that the children were neglected, and that respondent was unfit for reasons other than financial. The minors were made wards of the court and the goal was set for return home within 12 months.

¶ 3　　Respondent filed an amended petition to vacate the adjudication pursuant to section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2018)), alleging that she did not recall being advised about any stipulations that were to be entered on the record; that she never personally signed a stipulation or orally agreed to any statement of facts to be entered on the record; and that the record is void of any factual matters that are the subject of a stipulation. Respondent appeals the trial court's denial of the amended petition to vacate the order of adjudication entered on September 4, 2018. She contends on appeal that the trial court failed to obtain a knowing and voluntary stipulation of facts contrary to section 2-21(1) of the Illinois Juvenile Court Act (Act) (705 ILCS 405/2-21(1) (West 2018)). We affirm.

¶ 4　　　　　　　　　　　　　I. BACKGROUND

¶ 5　　On July 17, 2018, the State filed a petition for adjudication of wardship alleging that the minors were neglected or abused or were at risk of being neglected or abused. On the same date, following a hearing, an order was entered that there was an urgent necessity to place the minors in shelter care.

¶ 6     At the hearing on the petition for temporary custody in the Calhoun County circuit court on July 31, 2018, respondent acknowledged that she had been served with a copy of the petition for adjudication of wardship. The record shows that the judge admonished respondent regarding the allegations contained in the petition. The judge asked respondent if she had received a copy of the petition for adjudication of wardship to which she responded that she had received it last week. The record reveals that respondent was personally served with a summons and a copy of the petition for adjudication of wardship on July 30, 2018.

¶ 7     The judge asked respondent if she understood the allegations in the petition and she responded "Yes." The judge also admonished respondent regarding her rights. He explained what an adjudicatory hearing was. The judge also pointed out that respondent would be given a copy of her rights "momentarily." After explaining her rights to have an attorney and her rights regarding the hearing, respondent indicated that she understood her rights. At her request, Scott Schultz, who had been appointed to represent respondent in the criminal matter and who was present with her at the hearing on the petition for temporary custody, also was appointed to represent respondent in the instant matter.

¶ 8     The adjudicatory hearing was held on September 4, 2018. Respondent and her counsel, Schultz, were present. The State noted that it spoke to L.H.'s father and to Schultz and that they both were prepared to stipulate to the facts for the purpose of the hearing. The guardian *ad litem* had no objections either since the parents were entering the stipulation. The State then recited the factual basis for the record, indicating that the State would have called two police officers to testify consistently with the specific facts contained in the petition for adjudication of wardship and that the State also would have presented an expert report that the substance found in respondent's possession, on two separate occasions, was methamphetamine. The State indicated that the minors

were in an area where they had been exposed to both a controlled substance and a dangerous weapon.

¶ 9    Schultz stipulated on behalf of his client to both the factual basis and that the facts as stated were sufficient for the court to make a finding that the minors were neglected or abused or were at risk for neglect or abuse.  The father and the guardian *ad litem* also stipulated.  The court found that the factual basis was sufficient to find, by a preponderance of the evidence, that the minors were neglected or abused or were at risk for neglect or abuse.  An order was entered documenting the court's finding.

¶ 10    On October 30, 2018, the cases were transferred from Calhoun County to Carroll County because respondent had moved to Iowa and the minors were in foster care in Carroll County.

¶ 11    On January 4, 2019, the trial court appointed David Brown, a Carroll County public defender, to represent respondent in this matter.  During a dispositional hearing on February 1, 2019, Brown told the court that respondent had told him that "she wasn't even aware that there was an Adjudication Petition in Calhoun County."  Brown stated that he was shown the order which said the parties had stipulated to the petition and that findings were entered by the court down there, "but with that said, you know, I—I—it's a little late to go back and challenge Calhoun County at this point so I guess we're ready to move forward."  The judge noted that it was a "strange situation" with regard to the transfer and asked if counsel wished to proceed or file "any motions."  Brown asked for a short continuance to consider filing a section 2-1401 petition.  What concerned Brown was the complaint stated that respondent "committed the offense of Possession of Methamphetamine," but she had "vehemently denie[d] that she was possessing any methamphetamine."  The judge noted that he did not know the facts because they were not "typed

up." The record did not appear to have a copy of the reports of proceedings from Calhoun County at that point in the proceedings. As such, the court continued the matter to March 1, 2019.

¶ 12  At the March 1 hearing, Brown argued that the transcript did not show that respondent herself stipulated to the facts and that she was continuing to assert that she had no understanding that she had waived the ability to contest the underlying facts for the proceeding. Although Brown acknowledged that respondent's former counsel spoke for her, Brown appeared to argue that the law required respondent to be asked on the record if she agreed to the stipulation. Brown stated that he was going to file a section 2-1401 petition.

¶ 13  On March 7, 2019, respondent filed a section 2-1401 petition to vacate the adjudication. It alleged that (1) respondent "does not recall ever being advised regarding any stipulations that were to be entered on the record"; (2) the record of September 4, 2018, was void of any factual matters that were the subject of a stipulation; and (3) "this court does not have any factual information that is necessary to proceed to a dispositional stage regarding the basis for the adjudication." The court dismissed the petition, finding that it was untimely in that it was premature because a final order had not been entered yet.

¶ 14  At the dispositional hearing on April 12, 2019, the court found the minors were neglected and that respondent was unfit for reasons other than financial. The court ordered the minors to be made wards of the court. The goal was set for return home within 12 months.

¶ 15  On May 10, 2019, respondent filed an amended section 2-1401 petition to vacate adjudication. The petition was identical to the earlier petition except it added that the Carroll County circuit court had denied respondent's initial petition to vacate as untimely in that the petition could not be heard until after the dispositional hearing.

¶ 16    At the hearing on the section 2-1401 petition, respondent testified that she was not sure if she was "involved" in an adjudication hearing on September 4, 2018, in Calhoun County. She stated that "I just showed up when they told me to show up." Respondent further testified that she was not advised as to the basis of the petition for adjudication of wardship and that she was never told that certain facts would be used as the basis for the petition. Respondent testified that she did not sign any form that she agreed to stipulate to the facts contained in the petition and she claimed that she never agreed to stipulate to any facts. She also claimed that she did not understand that an adjudication was entered in Calhoun County on September 4, 2018, finding her children neglected.

¶ 17    During cross-examination, respondent admitted that she was present at the adjudication hearing and that she was represented by counsel. She denied that she ever received a copy of the petition for adjudication of warship or that she was told what allegations were contained in the petition. Respondent testified that she was not under the influence of drugs or alcohol on the day of the adjudication hearing. She further testified that she did not remember the judge stating the allegations contained in the petition and that her prior attorney only told her when the next court dates were to be held. Respondent also stated that she did not have any difficulty reading.

¶ 18    The court denied the petition, finding that respondent had previously acknowledged that she had been served a copy of the petition for adjudication of wardship and the judge in Calhoun County "thoroughly went through" the contents of the petition and respondent indicated that she understood. The court further found respondent's credibility as a witness lacking, as the record was clear that she was advised, and she acknowledged she understood the petition on the record. Because respondent's petition was brought under section 2-1401, it required respondent to show the stipulated facts were untrue, which would be a meritorious defense to the petition for

adjudication of wardship and the court noted that respondent did not present this evidence. Even so, the court pointed out that respondent would not be able to overcome that the L.H.'s father appeared in court for the adjudicatory hearing and entered into the same stipulation of facts and that stipulation alone would have provided a sufficient factual basis for the trial court to make its findings of neglect.

¶ 19    Respondent timely appeals the denial of her section 2-1401 petition.

¶ 20                                II. ANALYSIS

¶ 21    Respondent brings this appeal from the denial of her section 2-1401 petition, which provides for relief from final orders and judgments after 30 days but before 2 years from entry. See 735 ILCS 5/2-1401 (West 2018).

¶ 22    When a section 2-1401 petition presents a fact-dependent challenge to a final judgment or order, the petitioner must set forth specific factual allegations supporting each of the following elements: (1) the existence of a meritorious defense; (2) due diligence in presenting this defense; and (3) due diligence in filing the section 2-1401 petition for relief. *Smith v. Airoom Inc.*, 114 Ill. 2d 209, 221 (1986). In addition, when the facts supporting the section 2-1401 petition are challenged by the respondent, a full and fair evidentiary hearing should be held. *Id.* at 223. The trial court may also consider equitable considerations to relax the applicable due diligence standards under the appropriate limited circumstances. See *Id.* at 226-29.

¶ 23    The quantum of proof necessary to sustain a section 2-1401 petition is a preponderance of the evidence of a defense or claim that would have precluded entry of the judgment in the original action and diligence in both discovering the defense or claim and presenting the petition. *People v. Vincent*, 226 Ill. 2d 1, 8-9 (2007). See also *Airoom,* 114 Ill. 2d at 223. The circuit court's

ultimate decision on the petition is reviewed on appeal for an abuse of discretion. *Warren County Soil and Water Conservation District v. Walters*, 2015 IL 117783, ¶ 51.

¶ 24 Respondent's notice of appeal is from the trial court's order denying her amended motion to vacate the adjudication. Yet, her argument on appeal does not even address the standard of review in the context of a section 2-1401 petition. However, because respondent's section 2-1401 petition is based on the alleged failure to comply with the proper procedures of the adjudicatory hearing (see 705 ILCS 405/2-21(1) (West 2018)), we will address her argument in terms of whether the trial court abused its discretion in finding that respondent had failed to set forth the existence of a meritorious defense. See *Airoom*, 114 Ill. 2d at 221.[1]

¶ 25 Section 2-21(1) of the Act provides:

"If the court finds that the minor is abused, neglected, or dependent, the court shall then determine and put in writing the factual basis supporting that determination, and specify, to the extent possible, the acts or omissions or both of each parent, guardian, or legal custodian that form the basis of the court's findings. That finding shall appear in the order of the court." 705 ILCS 405/2-21(1) (West 2018).

---

[1] The trial court likely relaxed the element of due diligence in bringing the section 2-1401 petition because at the hearing on February 1, 2019, in Carroll County, the record shows that it did not appear to have a copy of the reports of proceedings from Calhoun County. Further, counsel for respondent had to wait to file an amended petition until after a dispositional hearing was held on April 12, 2019, because the original section 2-1401 petition that had previously been filed was prematurely filed. See *In re Johnson*, 102 Ill. App. 3d 1005, 1014 (1981) (adjudicatory hearing is not considered a final order).

¶ 26    Respondent contends that the trial court failed to comply with the requirements of section 2-21(1) at the adjudicatory hearing. Respondent notes that the requirements of section 2-21(1) provide for notice to the respondent and notice to inform a subsequent reviewing court of the factual basis and the trial court's findings. She claims that "not only is the trial court record deficient, but the written order entered by the trial court is also deficient." Respondent argues that she was not aware of the factual basis for the neglect petitions and that she was completely uninformed about what had happened in Calhoun County. Respondent also argues that the trial court failed to specifically determine whether she voluntarily and knowingly entered into the stipulated adjudicatory hearing. The record belies her arguments.

¶ 27    Respondent's own words at the July 31, 2018, hearing in Calhoun County show that she received the petition for adjudication of wardship prior to July 31, 2018. Moreover, the Calhoun County court record indicates that respondent was personally served with summons and a copy of the petition for adjudication of wardship on July 30, 2018.

¶ 28    In addition, the record reveals that respondent was thoroughly admonished as to the contents of the petition for adjudication of wardship and as to what her rights were in the court proceeding on July 31, 2018. These admonishments included a presentation of the actual allegations of neglect contained in the petitions and respondent answered that she understood the admonishments each time the court asked her.

¶ 29    At the adjudicatory hearing on September 4, 2018, respondent was represented by an attorney. The petitions plainly stated in the titles and in the bodies that the State was seeking to have the minors adjudicated wards of the court. In her presence, and without objection from respondent, her attorney stipulated to the facts in the petitions on respondent's behalf after the Calhoun County State's Attorney recited the factual basis on the record. As emphasized by the

court in its memorandum of decision and order upon the denial of the section 2-1401 petition, respondent failed to make a clear showing that the matter stipulated to was untrue. See *In re Moss' Estate*, 109 Ill. App. 2d 185, 192-93 (1969). Also an attorney can bind a client with a stipulation of fact. *Id.* at 192.

¶ 30 Nevertheless, respondent's motion was brought pursuant to section 2-1401, and to present her claim for relief from judgment, she must show the stipulated facts were untrue to support the existence of a meritorious defense to the petition for adjudication of wardship and she has failed to do so. See *In re Marriage of Arjmand*, 2013 IL App (2d) 120639, ¶ 29 (the purpose of a section 2-1401 petition is for a party to bring to the court's attention facts that, if known to it at the time it rendered its judgment, would have changed the court's determination); *In re Moss' Estate*, 109 Ill. App. 2d at 192-93. In addition, respondent could not overcome that L.H.'s father appeared in court for the adjudicatory hearing and entered into the same stipulation of facts and his stipulation alone would have provided a sufficient basis for the trial court to make its finding of neglect. See *In re Johnson*, 102 Ill. App. 3d at 1014.

¶ 31 Based on the preceding, we find the trial court did not abuse its discretion in denying respondent's amended petition to vacate the adjudication pursuant to section 2-1401. As such, we need not address respondent's reliance on the dissenting opinion in *In re A.L.*, 2012 IL App (2d) 110992 (Justice Birkett, dissenting).

¶ 32                                    B. Ineffective Assistance of Counsel

¶ 33 Respondent next contends that she was denied her sixth amendment right to her court-appointed counsel because he failed to inform her of the nature and the consequences of the adjudication proceedings in the Calhoun County adjudication case.

¶ 34    To prevail on a claim of ineffective of assistance of counsel, a defendant must show that her attorney was actually incompetent, by demonstrating that counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by the allegedly deficient performance, by demonstrating that, but for counsel's deficient performance, the result of the proceedings would have been different. *People v Dominguez*, 331 Ill. App. 3d 1006, 1014 (2002) (citing *Strickland v. Washington*, 446 U.S. 668, 694 (1984)).   Courts may resolve an ineffectiveness claim under the two-part *Strickland* test by reaching only the prejudice component, as lack of prejudice renders irrelevant the issue of counsel's performance. *People v. Coleman*, 183 Ill. 2d 366, 397-98 (1998).

¶ 35    Here, respondent did not establish prejudice where L.H.'s father also stipulated to the facts sufficient to establish the adjudication.  We therefore reject respondent's ineffective assistance claim.

¶ 36                III. CONCLUSION

¶ 37    Accordingly, we affirm the judgment of the circuit court of Carroll County.

¶ 38    Affirmed.